## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PETER-TAKANG**                                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 14-1078**

**DEPARTMENT OF CHILDREN AND FAMILY**              **SECTION: "G"(4)**
**SERVICES, et al.**

<u>ORDER</u>

Before the Court are motions to dismiss filed by Defendants Touro Infirmary Hospital ("Touro")[1] and Glen D. Steeb, M.D. ("Dr. Steeb").[2] Having considered the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant both motions.

## I. Background

*A.     Factual Background*

On May 15, 2014, Plaintiff, appearing *pro se*, filed the complaint in this matter, wherein she alleges that she underwent surgery for an allegedly ectopic pregnancy at Touro on June 18, 2002.[3] Plaintiff claims that Dr. Steeb, allegedly her physician at the time, told her that the twins had died immediately after removal from her abdomen, and that thereafter Touro disposed of their bodies without her authorization.[4] On August 13, 2005, according to the complaint, Plaintiff learned from an article published in the New Orleans Times-Picayune newspaper that twin toddlers were found walking down Chef Menteur Highway in Louisiana.[5] Believing that the toddlers were her twins,

---

[1] Rec. Doc. 45.

[2] Rec. Doc. 46.

[3] Rec. Doc. 1 at p. 2.

[4] *Id.*

[5] *Id.*

1

Plaintiff approached the Department of Children and Family Services ("DCFS") to request DNA testing to verify "that these children were my biological twins."[6] The request was denied, and Plaintiff filed this lawsuit on May 15, 2014 against Suzy Sonnier ("Sonnier") in her official capacity as Secretary of DCFS, Touro Hospital, and Dr. Steeb.

Plaintiff alleges that Touro knew or should have known that Dr. Steeb's medical license had been terminated and reinstated in February 2001, and that he was suspended from Touro before he performed surgery on her in July of 2002, and suspended again in 2002.[7] Plaintiff accused DCFS of refusing to test the DNA of the twins Plaintiff believes to be her children, and alleges that Dr. Steeb told DCFS that Plaintiff's children "were born dead and not to entertain [her]."[8]

## B.   Procedural Background

Plaintiff filed an amended complaint on August 27, 2014.[9] DCFS filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court granted on October 1, 2014.[10] Plaintiff filed a second amended complaint on April 7, 2015.[11] Plaintiff also filed a motion for reconsideration of the Court's order dismissing DCFS,[12] a motion for default judgment as to Touro,[13]

---

[6] *Id.* at p. 3.

[7] Rec. Doc. 30 at p. 3.

[8] *Id.* at p. 8.

[9] Rec. Doc. 8.

[10] Rec. Doc. 13.

[11] Rec. Doc. 30.

[12] Rec. Doc. 14.

[13] Rec. Doc. 27.

and a "Motion for Permissive Joinder of Parties."[14] The Court denied all three motions on July 6, 2015.[15]

Touro and Dr. Steeb filed nearly identical motions to dismiss on November 20, 2015.[16] Plaintiff filed an opposition to both on December 15, 2015.[17]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of Their Motions*

As noted above, with a few minor differences, Touro and Dr. Steeb filed identical motions to dismiss on November 20, 2015.[18] In their motions, Defendants quote the Court's prior decision declining to enter a default judgment against Touro, wherein it stated that Plaintiff's second amended complaint fails to state a claim upon which relief may be granted against Touro.[19] Dr. Steeb contends that, because the claim against him is "essentially identical" to Plaintiff's allegation against Touro—namely that Dr. Steeb or a representative of Touro allegedly instructed a representative of DCFS that Plaintiff's children were born dead "and not to entertain [her]"—the Court's findings concerning Touro apply equally to Dr. Steeb.[20]

Defendants argue that they are entitled to dismissal because the complaint is vague,

---

[14] Rec. Doc. 31.

[15] Rec. Doc. 33.

[16] Rec. Docs. 45, 46.

[17] Rec. Doc. 55.

[18] Rec. Docs. 45, 46.

[19] Rec. Doc. 45-1 at p. 1.

[20] Rec. Doc. 46-1 at p. 3 n.3.

3

incoherent, and fails to plead enough facts to state a claim for relief that is plausible on its face.[21]
Defendants argue that Plaintiff's basic allegation appears to be that, in August of 2005, Dr. Steeb
and/or a representative of Touro allegedly instructed a representative of DCFS that Plaintiff's
"children were born dead and not to entertain [her]," which allegedly` resulted in her being deprived
of a DNA test of two children she believes to be her biological offspring.[22] These "vague and
incoherent allegations," Defendants contend, fail to allege what duty, if any, Defendants owed to
Plaintiff, what duty was breached, and what conduct breached it.[23]

In addition, Defendants aver, Plaintiff's claim is prescribed on its face because, under
Louisiana law, actions sounding in tort are subject to a prescription period of one year.[24] Defendants
allege that the prescription period commences to run from the day the injury or damage is
sustained.[25] According to Defendants, accepting Plaintiff's allegations as true, the alleged
misconduct by Defendants occurred in August of 2005, and thus it is clear that more than one year
passed between the allegedly negligent act and the filing of Plaintiff's complaint.[26] Defendants aver
that Plaintiff's complaint makes it clear that there is no basis for finding that prescription was ever
interrupted, and that the complaint describes injuries that were immediately realized by Plaintiff.[27]

---

[21] Rec. Docs. 45-1 at p. 2; 46-1 at p. 1.

[22] Rec. Docs. 45-1 at p. 3; 46-1 at p. 3.

[23] Rec. Docs. 45-1 at p. 3; 46-1 at p. 3.

[24] Rec. Docs. 45-1 at p. 3; 46-1 at p. 4.

[25] Rec. Docs. 45-1 at p. 4; 46-1 at p. 4.

[26] Rec. Docs. 45-1 at p. 4; 46-1 at p. 4.

[27] Rec. Docs. 45-1 at p. 4; 46-1 at p. 4.

**B.**     *Plaintiff's Arguments in Opposition*

In opposition, Plaintiff filed two seemingly separate memoranda. In the first, she urges the Court to take judicial notice of an order rendered on January 23, 2003 in civil case number 03-0946, which she contends shows that prescription would be inapplicable.[28] Plaintiff attaches an exhibit containing a motion and order for voluntary dismissal without prejudice of Plaintiff's claims against Touro and others so that she may pursue claims before the Louisiana Medical Review Panel.[29] Plaintiff next contends that she "seeks to invoke the doctrine of Equitable Estoppel and Unclean Hand to preclude the continuing denial of facts by Touro Infirmary and their counsel of record."[30] Without elaborating, Plaintiff appears to argue her complaint may not be dismissed unless it states a claim which is wholly frivolous.[31]

In her second memorandum, Plaintiff states a long series of facts, contained in none of her complaints or amended complaints, in which she appears to allege that Dr. Steeb left Plaintiff waiting for an emergency room examination for more than 18 hours without checking on her and while she was "in a very dangerous state."[32] Plaintiff alleges that although she was admitted to Touro's emergency room by a Dr. Kevin Jordan on June 18, 2002, she was not seen by a doctor until the early evening of June 19, 2002.[33] Plaintiff alleges that Dr. Steeb did not consult with her on the removal of infants from her abdomen and that he awakened her from anaesthesia to force her to sign

---

[28] Rec. Doc. 55 at p. 1.

[29] Rec. Doc. 55-1.

[30] Rec. Doc. 55 at p. 1.

[31] *Id.* at p. 3.

[32] *Id.* at p. 5.

[33] *Id.*

an unknown document allowing him and/or Touro to remove "the live babies."[34]

Plaintiff contends that a nurse informed her that Dr. Steeb was not authorized to perform surgery at Touro.[35] Plaintiff alleges that Dr. Steeb returned to see her 24 hours after he removed the twins and reported that they had died, only to return ten minutes later to inform her that he removed copious amounts of scar tissue and there had never been any twins.[36] Plaintiff contends that Touro is responsible for the negligent behavior of Dr. Steeb, as well as two other doctors not named in the complaint, Dr. Jordan and Dr. Francis, Dr. Francis's assistant, the nursing staff, and administrators at Touro.[37] She also appears to argue that Touro and Dr. Steeb conspired to deprive her of her twins after removing them in surgery, in violation of 42 U.S.C. § 1983.[38]

### III. Law and Analysis

#### A.   *Legal Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[39] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[40] "Factual allegations must be enough to raise a right to relief above the

---

[34] *Id.*

[35] *Id.* at p. 6.

[36] *Id.*

[37] *Id.*

[38] *Id.* at p. 7.

[39] Fed. R. Civ. P. 12(b)(6).

[40]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

speculative level."[41] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[42]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[43] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[44] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[45] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[46]The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[47] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[48] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[49] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim

---

[41] *Twombly*, 550 U.S. at 556.

[42] *Id.* at 570.

[43] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[44]*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

[45] *Id.* at 679.

[46] *Id.* at 678.

[47] *Id.*

[48] *Id.*

[49] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

must be dismissed.[50]

## B.   *Analysis*

Defendants make two arguments for dismissal of Plaintiff's complaint: (1) that Plaintiff's allegations are too vague to state a claim upon which relief can be granted, and (2) that Plaintiff's claims, even if taken as true, are prescribed by Louisiana's one-year prescription period for negligence claims. As Defendants note, the Court, in its analysis concerning whether to grant a default judgment against Touro, has previously found that Plaintiff's second amended complaint "do[es] not state a plausible claim for relief" against Touro.[51] Although the Court did not at that time engage in a detailed analysis, a review of Plaintiff's complaints reveals that, as Defendants allege, it is difficult to discern what causes of action, if any, Plaintiff can maintain against Defendants based on her chief allegation that Dr. Steeb allegedly told a representative of DCFS not to entertain Plaintiff's request for DNA testing.

In her opposition, Plaintiff sets out nearly four pages of additional facts concerning claims against Touro and Dr. Steeb that essentially amount to negligence and/or medical malpractice.[52] An opposition to a motion to dismiss is not the place for a party to raise new factual allegations or assert new claims.[53] Nevertheless, considering the facts raised in Plaintiff's opposition helps the Court to

---

[50] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[51] Rec. Doc. 33 at p. 12.

[52] Rec. Doc. 55 at pp. 4–7.

[53] *See Stewart v. Caton*, No. 13-823, 2013 WL 4459981, at *9 (E.D. La. Aug. 16, 2013) (Barbier, J.) ("The Court does not consider facts alleged only in the opposition to a motion to dismiss; but, if Plaintiff has discovered more information that would render her initial complaint incomplete or untrue, she should amend her complaint at this early stage of litigation to reflect such new information."); *Goodwin v. Hous. Auth. of New Orleans*, No. 11-1397, 2013 WL 3874907, at *9, n.37 (E.D. La. July 25, 2013) (Morgan, J.).

clarify that, even if Plaintiff were granted leave to amend her complaint a third time, Plaintiff's allegations against Touro and Dr. Steeb would, at best, consist of state law negligence and medical malpractice claims for their alleged failure to provide proper emergency medical care. The Court cannot discern any additional causes of action for Touro and/or Dr. Steeb's alleged direction to a representative of DCFS not to entertain Plaintiff's request for DNA testing. Thus, considering Plaintiff brings claims arising in negligence and/or medical malpractice, the Court next considers Defendants' arguments that any such claims are prescribed.

## C.   *Legal Standard for Prescription*

"[P]rescription is a proper reason for granting a Rule 12(b)(6) motion to dismiss . . . ."[54] A prescriptive defense supports dismissal under 12(b)(6) "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[55] Delictual actions are subject to a liberative prescription of one year, which commences to run from the date the injury or damage is sustained.[56] Furthermore, medical malpractice claims are governed by the Louisiana Medical Malpractice Act ("LMMA"), which provides that malpractice claims against health care providers must be filed within one year of an alleged negligent act or omission or within one year of discovery of an alleged negligent act or omission.[57] However, in all circumstances, malpractice claims must be filed, at the latest, within three years after an alleged

---

[54] *Snow v. Cracker Barrel Old Country Store, Inc.*, No. 15-02375, 2015 WL 5276772, at *2 (E.D. La. Sept. 8, 2015) (Engelhardt, J.); *see also Tigert v. Am. Airlines, Inc.,* 390 F. App'x 357 (5th Cir. 2010) (affirming dismissal of time-barred claim under 12(b)(6)).

[55] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *Anderson v. City of New Orleans*, No. 03-3010, 2004 WL 1396325, at *3 (E.D. La. June 18, 2004) ("A complaint is subject to dismissal for failure to state a claim upon which relief can be granted if the prescriptive period has run.").

[56] La. Civ. Code art. 3492.

[57] La. Rev. Stat. Ann. § 9:5628(A).30.

9

negligent act or omission.[58]

## D.    *Analysis*

It appears clear from the face of Plaintiff's complaint that her claims were filed in May of 2014, nearly twelve years after she was allegedly treated by Dr. Steeb in June of 2002, and nearly nine years after Dr. Steeb and/or a representative of Touro allegedly told a representative of DCFS, presumably in or around August 2005, not to "entertain" Plaintiff. Generally, the party pleading prescription bears the burden of proving that a lawsuit has prescribed,[59] but "[i]n those instances . . . when the plaintiff's petition shows on its face that the prescriptive period has expired, the burden shifts to the plaintiff to demonstrate suspension or interruption of the prescriptive period."[60]

Here, it is facially clear that Plaintiff's claims for both negligence and medical malpractice have prescribed, unless Plaintiff can show that they were suspended or interrupted such that her complaint was timely filed.[61] In opposition to Defendants' arguments, Plaintiff states only that an order issued by another section of this Court on January 23, 2003 would make prescription "inapplicable" in this case.[62] The order, attached by Plaintiff, states that the action filed by Plaintiff, which appears to be substantially the same as the instant case, shall be voluntarily dismissed without

---

[58] *Id.*

[59] *Wilkes v. Carroll*, 704 So. 2d 938, 939 (La. App. 2 Cir. 1997).

[60] *Coleman v. Acromed Corp.*, 764 So. 2d 81, 83 (La. App. 1 Cir. 1999) (citing *Lima v. Schmidt*, 595 So. 2d 624 (La. 1992)); *see also Blake v. Maley*, 46,036 (La. App. 2 Cir. 1/26/11), 57 So. 3d 1122, 1126 (citing *Carter v. Haygood*, 04–0646 (La.1/19/05), 892 So. 2d 1261).

[61] To the extent that Plaintiff may also seek relief under 42 U.S.C. § 1983, the analysis remains the same, as federal courts borrow state statutes of limitations to govern claims brought under § 1983. *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). Here, Plaintiff's § 1983 claim would be governed by the one-year prescription period for negligence claims or the one to three-year period for medical malpractice claims. *See Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989).

[62] Rec. Doc. 55 at p. 1.

10

prejudice to enable her to proceed in Louisiana Medical Malpractice proceedings.[63]

Plaintiff provides no explanation or theory for why such an order would prevent her claims from prescribing. When a plaintiff voluntarily dismisses an action without prejudice, it is as if a suit has never been filed.[64] Therefore, "[f]or purposes of the statute of limitations, the plaintiff receives no credit or tolling for the time that elapsed during the pendency of the original suit."[65] The Court sees no reason why Plaintiff's voluntary dismissal of her action in 2003 should preclude the Court from finding that her claims did not prescribe in the interim. Furthermore, although the prescription period for a medical malpractice claim may be tolled during the pendency of a medical review panel,[66] Plaintiff has provided no evidence concerning any claims pending before a medical review panel or any suggestion that such proceedings lasted for more than ten years, thus tolling the prescription period until Plaintiff filed the instant suit in May of 2014. "[W]hen the plaintiff's petition shows on its face that the prescriptive period has expired, the burden shifts to the plaintiff to demonstrate suspension or interruption of the prescriptive period."[67] Here, Plaintiff has not met her burden of proving that her claims have not prescribed, and therefore they must be dismissed.

---

[63] Rec. Doc. 55-1 at p. 2.

[64] *Ford v. Sharp*, 758 F.2d 1018, 1023–24 (5th Cir. 1985) (citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976); *Alvarado v. Maritime Overseas Corp.*, 528 F.2d 605 (5th Cir. 1976)).

[65] *Id.* at 1024 (citing 5 Moore, Lucas & Wicker, Moore's Federal Practice ¶ 41.05[2], at 41-66-67; ¶ 41.11[2], at 41-144, 145 (2d ed. 1984)).

[66] La. Stat. Ann. § 40:1231.8; *see also Blake v. Maley*, 46,036 (La. App. 2 Cir. 1/26/11), 57 So. 3d 1122, 1126.

[67] *Coleman v. Acromed Corp.*, 764 So. 2d 81, 83 (La. App. 1 Cir. 1999) (citing *Lima v. Schmidt*, 595 So. 2d 624 (La. 1992)); *see also Blake*, 57 So. 3d at 1126 (citing *Carter v. Haygood*, 04–0646 (La.1/19/05), 892 So. 2d 1261).

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Touro's "Motion to Dismiss"[68] is **GRANTED.**

**IT IS FURTHER ORDERED** that Dr. Steeb's "Motion to Dismiss"[69] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this __5th__ day of January, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[68] Rec. Doc. 45.

[69] Rec. Doc. 46.